**Burney YOUNG, et al.**

v.

**PLAYERS LAKE CHARLES, L.L.C., Players Casino, Players Club International, Inc., Players Lake Charles Riverboat, Inc. d/b/a and/or a/k/a Players III, Players International, Inc., Players Holding, Inc., Players, L.C., Inc.**

v.

**Chris Dewayne West.**

**No. Civ.A. G–98–357.**

United States District Court,
S.D. Texas,
Galveston Division.

April 27, 1999.

James Bruce McIver, Mandell and Wright, Houston, TX, Kenneth DeJean, Lafayette, LA, for Plaintiffs.

Kent Ewing Westmoreland, Stanley T. Proctor, Phelps Dunbar, Houston, TX, for Defendants.

Barbara L. Hachenburg, Germer & Gertz, Houston, TX, for Third-Party, Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this suit on behalf of himself and several deceased and injured members of his family. Deceased Plaintiffs suffered fatal injuries on July 28, 1997, when their vehicle was struck by a vehicle driven by Third Party Defendant Chris Dewayne West, who allegedly had been gambling and extensively drinking at the casino boat owned and operated by Defendant in Lake Charles, Louisiana. Plaintiff filed this claim against Defendants on July 20, 1998. Now before the Court is Defendants' Motion for Summary Judgment of February 22, 1999. For the reasons set forth below, the Motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL SUMMARY

On July 28, 1997, Plaintiffs Katherine Young, Joshua Young, Seth Young, and Angelina Rios, all residents of Texas, were traveling west along Interstate Highway 10 in Vinton, –Louisiana when their vehicle was struck by a vehicle driven by Third Party Defendant Chris Dewayne West ("West"). West's vehicle was traveling east along I–10, but at the time of the collision, it had crossed over the highway median and was on the westbound side, moving against oncoming traffic. Angelina Rios, Katherine Young, and Seth Young, an eighteen-month-old infant, were killed instantly or died en route to the hospital. A fourth passenger, Joshua Young, was severely injured and has since undergone extensive rehabilitation in Texas. West was also severely injured and remains confined to a nursing home in Texas.

Laboratory tests conducted after the accident determined West's blood alcohol level to be .259, or more than twice the level of per se intoxication in Texas, approximately an hour and a half after the collision. West had undisputedly been drinking for several hours onboard PLAYERS III, Defendants' riverboat casino in Lake Charles, Louisiana, where he had gone to gamble. During the time he gambled, West received eleven "comps" from the casino, at least some of which he used to purchase drinks. West had left the riverboat only a short time before the accident.

On July 20, 1998, Plaintiff filed suit against Defendants in this Court. On July 22, 1998, Plaintiff filed suit against West in the 136th District Court of Jefferson County, Texas. On July 27, 1998, several members of Rios's family on behalf of themselves and Rios's estate filed suit against Defendants in this Court. Three weeks before, on July 6, those parties had filed suit against West and his insurer in the Parish of Calcasieu, Louisiana. All of these actions were subsequently consolidated in this Court. Plaintiffs' theory of Defendants' alleged negligence is that Defendants were negligent in serving alcohol to West when Defendants knew or should have known that West was intoxicated and posed a danger to himself and others, including Plaintiffs.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### III. ANALYSIS

In their Motion for Summary Judgment, Defendants argue that Louisiana law governs this action. If that is the case, Plaintiffs' claims must be dismissed, because Louisiana law completely insulates providers of alcohol from liability for the actions of those to whom they sell or serve alcohol. *See* La.Rev.Stat.Ann. § 9:2800.1 (West 1986). Plaintiffs make two arguments in response. First, they argue that this Court has admiralty jurisdiction over the action and that consequently it must apply the substantive general maritime law. Second, Plaintiffs argue in the alternative that

if maritime law does not apply, Texas choice of law provisions require the Court to apply Texas law. Because the Court agrees with Plaintiffs that the general maritime law provides the substantive law in this action, it does not reach either Plaintiffs' second argument, or the dubious wisdom of Louisiana's appalling insulation of casino boats who use free or discounted liquor as the bait to entice gamblers, while ignoring the consequences when those predictably intoxicated gamblers hit the streets in lethal vehicles.

■ The Court notes that the existence of admiralty jurisdiction over this action is not in dispute at this time. Nonetheless, the Court feels constrained to address that question as a basis for further analysis. To determine whether it has admiralty jurisdiction under 28 U.S.C. § 1333, the Court employs a two-pronged test. Under the first prong, the Court determines whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). Under the second prong, the Court must consider two issues: (1) whether, based on the "general features of the type of accident involved," the incident has a "potentially disruptive impact on maritime commerce," and (2) whether the general character of the activity giving rise to the incident bears a substantial relationship to traditional maritime activity. *See id.* (*citing Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111· L.Ed.2d 292 (1990)).

■ None of the parties dispute that the alleged negligence, the serving of copious amounts of alcohol on the casino boat, occurred on navigable waters. Therefore, the first prong is indisputably satisfied. With respect to the first issue under the second prong, there appears to exist the potential for a disruptive impact on maritime commerce. Reaching this conclusion

requires the Court to describe the incident on an "intermediate level of possible generality." *See id.* at 538–39, 115 S.Ct. at 1051 (characterizing the general features of a fire aboard a docked pleasure boat as "damage by a vessel in navigable water to an underwater structure"). At an intermediate level of generality, then, this incident can be described as a potentially negligent condition affecting passengers aboard the vessel. It is not difficult to imagine a slightly different scenario from the case at bar in which an intoxicated passenger falls down a stairway or into the water. *See, e.g., Meyer v. Carnival Cruise Lines,* No. 93–2383, 1994 WL 832006, at *1 (N.D.Cal. Dec. 29, 1994) (stating that admiralty jurisdiction existed over an action in which the plaintiff consumed too much alcohol aboard a cruise ship and fell off a stairway). Such an incident could lead to a disruption as rescue crews attempt to locate and save the passenger or search for his body. With respect to the second issue under the nexus prong, there likewise appears to exist a substantial relationship to traditional maritime activity. The PLAYERS III is a mobile riverboat casino fully and presently capable of, and actually, traveling on navigable waters. In this respect, it is similar to cruise and sightseeing vessels that regularly transport passengers over navigable waters. Courts have consistently stated that torts on such vessels satisfy the traditional maritime activity requirement. *See, e.g., Palmer v. Fayard Moving & Transportation Corp.,* 930 F.2d 437, 441 (5th Cir. 1991); *Butler v. American Trawler Co.,* 887 F.2d 20, 21–22 (1st Cir.1989); *Carey v. Bahama Cruise Lines,* 864 F.2d 201, 207 (1st Cir.1988); *Luby v. Carnival Cruise Lines,* 633 F.Supp. 40, 41 n. 2 (S.D.Fla. 1986); *Palmer v. Ribax,* 407 F.Supp. 974, 978–79 (D.Fla.1976). Thus, the incident forming the basis of this action satisfies all the requirements of admiralty jurisdiction.

■■■ Defendants correctly argue that the presence of admiralty jurisdiction by itself does not necessarily answer the question of which substantive law governs this action. Ordinarily, with admiralty jurisdiction comes the application of substantive maritime law. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986). However, where there is no existing maritime rule that would govern an action, a court must determine whether it will fashion such a rule or instead apply existing state law. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 314, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955). It is Defendants' argument that there is no existing maritime rule regarding what is essentially dram shop liability and that under *Wilburn,* this Court must apply state law. In support of such argument, Defendants cite *Meyer,* where a United States District Court in California held that no federal maritime dram shop rule existed and that, as a consequence, California's dram shop statute provided the substantive law governing a plaintiff's admiralty claim. *See Meyer v. Carnival Cruise Lines, Inc.,* No. 93–2383, 1994 WL 832006, at *4 (N.D.Cal. Dec. 29, 1994) (*citing Wilburn,* 348 U.S. at 313, 75 S.Ct. at 370).

This Court recognizes the scholarship of its distinguished brethren in the Northern District of California. However, the existence of an unreported opinion from that district, as compelling as its reasoning might be to some, does not bind or persuade this Court. In fact, there is analogous precedent in the Fifth Circuit that there *is* a maritime rule concerning dram shop liability.

This very Court has held that a defendant can be held liable at maritime law for providing alcohol without adequate supervision. In *Thier v. Lykes Bros., Inc.,* the plaintiff suffered severe injuries when a car driven by the defendants' chief officer crashed on the way to a dinner. 900 F.Supp. 864, 866 (S.D.Tex.1995). The driver, who died in the crash, was legally intoxicated. *Id.* Evidence indicated that his intoxication was the product of a ship-

board atmosphere the Court described as a "floating dram shop." *Id.* at 870. The vessel maintained an extensive liquor supply, which was restocked frequently and made accessible to both passengers and crew. *Id.* Despite the existence of a policy ostensibly prohibiting the vessel's crew and officers from consuming alcohol aboard the ship or even bringing it onboard, the Court found in a bench trial that the defendants, the owners of the vessel, were negligent in "allowing a party atmosphere to prevail onboard wherein ship's officers frequently had girlfriends and guests onboard together with a regularly stocked store of party supplies including alcoholic beverages." *Id.* This negligence was the proximate cause of the plaintiff's injury, the Court held. *Id.* at 878. While *Thier* involved a plaintiff who was held to be a Jones Act seaman, that factor was not critical to the Court's ultimate holding. As the Court clearly emphasized, the seaman status of the plaintiff was irrelevant to the finding that the defendants were directly liable for their negligence in "failing to monitor alcohol consumption onboard, fostering a party atmosphere, and failing to prohibit drunk officers from driving." *Id.* at 879.

Moreover, this Court's opinion in *Thier* was not without antecedents in the Fifth Circuit. In *Reyes v. Vantage S.S. Co., Inc.,* the United States Court of Appeals for the Fifth Circuit addressed the issue of liability for the death of an intoxicated seaman who leaped from his vessel and drowned. 609 F.2d 140, 141–42 (5th Cir. 1980), *modifying* 558 F.2d 238 (5th Cir. 1977). The court held that the plaintiff could maintain a cause of action for negligent rescue, then remanded the action for a determination of causation, stating that in assessing the plaintiff's contributory negligence the district court below must consider the defendant's role in operating a "floating dram shop" from which crew members obtained intoxicants with no supervision. *See id.* at 146. The court specifically instructed that the district court, in considering causation and the plaintiff's

comparative negligence, weigh the "unseaworthiness *or negligence* [of defendants] with respect to the operation of a floating dram shop." *Id.* (emphasis added).

While *Reyes,* like *Thier,* is a Jones Act case, the Court finds no talismanic significance in that fact with respect to maritime dram shop liability. Neither opinion expressly premised the existence of a duty regarding the serving of alcohol on the status of the injured party. In fact, *Thier* expressly admonished that regardless of whether the Jones Act applied to the plaintiff's claim, the defendants were directly liable for any injuries resulting from their negligence in allowing alcohol to pervade their ship unsupervised. *See Thier,* 900 F.Supp. at 879 ("[I]rrespective of whether [plaintiff or driver] were Jones Act seamen or in the course and scope of their employment for Defendants at the time of the crash, Defendants are completely liable . . . .").

Similarly, the fact that Defendants in this case sold or gave alcohol to gambling patrons rather than provide it as a sort of "perk" to employees does not distinguish this case from those where courts in this Circuit found dram shop liability applying maritime law. Factually, the cases do not appear to be as distinguishable as Defendants would argue. In *Reyes,* for instance, the defendant shipowner sold alcohol to the seamen it employed. *See Reyes v. Vantage S.S. Co., Inc.,* 558 F.2d 238, 244 (5th Cir.1977), *modified,* 609 F.2d 140 (5th Cir.1980) (stating that "the practice of selling alcohol in such great quantities to the crew" should have been a factor in the district court's determination of fault). In the present case, moreover, the line between the sale of alcohol and its free provision has been intentionally blurred by Defendants for their own economic gain. Throughout the period he gambled aboard the PLAYERS III, Chris West received numerous "comps," or free vouchers, which he then used to purchase drinks. In fact, the practice of providing such vouch-

ers reflects an intentional attitude that can only encourage excessive drinking for the very purpose of facilitating gambling. While Defendants are nominally in the business of selling alcohol, it is clear that alcohol sales are merely incidental to Defendants' primary purpose—the creation of a party atmosphere in which patrons are encouraged to freely spend their money gambling and then hit the road when they have exhausted their funds, regardless of their physical condition. Defendants are essentially giving alcohol away in express furtherance of that goal, arguably under the smug misconception that Louisiana law insulates them from the predictable and tragic consequences.

Additionally, to the extent that the sale of alcohol differs from the free provision of alcohol, it is a difference without distinction. Defendants appear to imply that the question of dram shop liability for sellers of alcohol is too complex for a court to adequately address, being left instead to legislative process (properly influenced by well funded lobbyists for the gaming industry). Such a position is patently insulting to the judicial system, and, worse, is factually asinine. What complicates the issue of liability for sellers of alcohol is the tapestry of state legislatures that have involved themselves, each thread of which appearing to represent simply a distinct prevailing special interest. That can hardly be blamed on alleged judicial "simplicity." The fact that numerous state legislatures have each promulgated a different rule on the issue of dram shop liability does not mean that the question of seller liability is an inherently complex one. Rather, it simply means that, for various reasons, each legislature has chosen a distinct approach to a single issue. This Court (however simple it might be) views that issue to be well within its limited capabilities. Did Defendants have a duty toward Plaintiffs, did Defendants breach that duty, and was there a causal connection between Defendants' breach and Plaintiffs' injury? According to the fundamental principles of negligence law, which the general maritime law has adopted, plaintiffs are owed a duty of ordinary care. *See Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980) (*citing S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 165 (5th Cir.1979)). If a defendant fails to exercise ordinary care and the resulting harm was reasonably foreseeable, liability arises. *See id.* There is nothing inherently complicated about this rule as it relates to dram shop liability.

In sum, the Court concludes that there is an existing maritime rule governing the issue of dram shop liability. Accordingly, there is no need to perform a *Wilburn* analysis to determine whether the Court must apply state dram shop law. If Louisiana wants to establish shoreside casinos and insulate their liability, that is solely Louisiana's business. But, where navigable ships in Louisiana are going to entice residents of Texas and other states to flock in huge numbers to their casinos to drink too much and return home in a murderous condition, the general maritime law should and does afford the endangered public with a ready and wholly appropriate remedy. Defendant's Motion for Summary Judgment is therefore emphatically **DENIED.**

## IV. CONCLUSION

The Court finds as a matter of law that the general maritime law of the United States governs Plaintiff's claim. This case is set for trial on July 26, 1999. Without further commenting on the merits of the claims or defenses asserted, this Court will be prepared to carefully address them again at that time. For the reasons set forth above, Defendants' Motion for Summary Judgment is **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**