Terrance KLUDT, Plaintiff,

v.

MAJESTIC STAR CASINO, LLC, Defendant.

No. 2:00–CV–319–TS.

United States District Court, N.D. Indiana, Hammond Division.

Dec. 28, 2001.

Dennis M. O'Bryan, Neil A. Davis, Baun, Cohen & Kuebler, Birmingham, MI, for Plaintiff.

Scott R. Bilse, Abrahamson, Reed & Adley, Hammond, IN, Tammy S. Sestak, Steven B. Belgrade, John A. O'Donnell, Patrick J. Cullinan, James Kent Minnette, Belgrade & O'Donnell, Chicago, IL, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPRINGMANN, United States Magistrate Judge.

This matter is before the Court on a Motion for Summary Judgment [DE 31], filed by the Defendant, Majestic Star Casino, LLC, on August 31, 2001. For the following reasons, the Defendant's Motion for Summary Judgment is granted in part and denied in part.

### PROCEDURAL HISTORY

On May 12, 2000, the Plaintiff, Terrance Kludt, filed a Complaint in this Court, alleging that the Defendant breached its duty under general maritime law to exercise due care on the Plaintiff's behalf and that as a result of this breach the Plaintiff was injured.[1] The Complaint premises this Court's jurisdiction upon diversity of

---

1. The Complaint alleges that the Plaintiff is a citizen of the State of Michigan and that the Defendant is an Indiana corporation with its principal place of business in Indiana. The Complaint includes a sermon about the evils of the gambling industry, arguing that it pro- duces serious harmful effects on the health, welfare, and safety of citizens. Among the evils identified is the sale of alcoholic bever- age to those who patronize casinos so as to "create a party atmosphere in which patrons are encouraged to freely spend their money

citizenship pursuant to 28 U.S.C. section 1332.[2] The Complaint specifically alleges that "[o]n or about March 27, 1999, Plaintiff patronized Defendant's casino, THE MAJESTIC STAR, where he gambled for a number of hours subject to Defendant's illicit practice aforesaid, when while attempting to depart he plummeted from the top to the bottom of an escalator, all because of Defendant's failure to exercise due care on his behalf and thereby monitor the consumption of alcohol." Complaint at 2. The Plaintiff has made a demand for trial by jury and seeks both compensatory and punitive damages. On July 27, 2000, the Defendant filed its Answer and Affirmative Defenses.

On August 31, 2001, the Defendant filed its Motion for Summary Judgment, Memorandum in Support, and Exhibits. On October 2, 2001, the Plaintiff filed his Response and Exhibits. On October 22, 2001, the Defendant filed its Reply.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Pro. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demon-

gambling then hit the road in a murderous condition once they have exhausted their funds, regardless of their physical condition." Complaint at 2. The Complaint alleges that punitive damages are necessary to deter the Defendant and the casino industry from continuing to engage in this illicit practice.

The Court notes that the Complaint does not allege that the Defendant coerced, induced, or otherwise forced the Plaintiff to come to Indiana to patronize its casino or to purchase and/or consume any intoxicating beverage. Furthermore, the Complaint does not allege that the gambling business operated by the Defendant is itself illegal or contrary to the laws of the United States of America or the State of Indiana. In his Complaint, the Plaintiff ties his claim to injuries he allegedly sustained as a result of a spill he took on an escalator while he was in an intoxicated state; it does not, however, allege that the Plaintiff sustained any injuries on any road outside the Defendant's facility.

2. The Plaintiff in his Complaint does not invoke the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. section 1333, neither does he reference Federal Rule of Civil Procedure 9(h).

strate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may discharge its "initial responsibility" by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325, 106 S.Ct. 2548; *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 n. 3 (7th Cir.1994); *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Intern. Pension Fund,* 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito,* 686 F.2d 616, 617 (7th Cir.1982); *Faulkner v. Baldwin Piano & Organ Co.,* 561 F.2d 677, 683 (7th Cir.1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. F.R.C.P. 56(e); *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). Federal Rule of Civil Procedure 56(e) establishes: "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson,* 477 U.S. at 248–50, 106 S.Ct. 2505. Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue

for trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *Juarez,* 957 F.2d at 322.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 234 (7th Cir.1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994); *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Doe,* 42 F.3d at 443.

## MATERIAL FACTS

The Defendant operates the Majestic Star Casino Riverboat. Alcoholic beverage is served from 8:00 a.m. to 3:30 a.m., except on Sundays. Last call is at 3:30 a.m. One bar is located on the first floor, two bars are located on the second floor, and one on the third floor. Dollar and nickel slot machines are found on three floors. The fourth floor of the boat is a deck.

Typically, one or two bartenders work behind a bar, depending on the volume of passengers on the floor. On a weekend, the Defendant will put two bartenders behind the bars on the first and second floors. For bartenders, there are two shifts, 8:00 a.m. to 6:00 p.m. and 6:00 p.m. to close. During a shift, bartenders are given a thirty minute break and a fifteen minute break. During a bartender's breaks, another bartender called a "breaker" replaces the breaking bartender. Approximately six bartenders, including the

breaker, will be on the boat during any given shift. The Defendant also assigns from four to seven beverage servers on each of the first, second, and third floors.

The Defendant provides employees with a handbook entitled Controlling Alcohol Risks Effectively (CARE), which contains information regarding guest alcohol use, effects, identification criteria, intervention, and risk prevention. Food and beverage employees are administered a test that is included in the CARE handbook.

On Friday, March 26, 1999, the Plaintiff, Terrance Kludt, and his wife boarded the boat some time between 4:00 p.m. and 5:00 p.m. While they were on the boat, the Plaintiff and his wife played slot machines on at least two floors, ate a light meal, and visited most of the floors on the boat. During their time on the boat, the Plaintiff's wife was with the Plaintiff for some periods of time but away from him during other periods. The Plaintiff also made several visits to the cashiers and obtained cash from an automatic teller machine (ATM). They remained on the boat until approximately 4:00 a.m. on March 27, 1999. As they were leaving the boat, the Plaintiff fell on an escalator and was injured.

The Plaintiff and his wife have testified that while he was on the boat, the Plaintiff consumed a substantial amount of beer that he purchased from various bars and beverage servers on the boat[3] and that he became intoxicated. The Plaintiff, who has a history of alcohol use and abuse, testified that he purchased most of the beer at the bars on the boat and that he himself walked to and from the bars, placed the orders, and purchased the

drinks. The Plaintiff cannot identify any of the bartenders or servers, cannot remember whether the bartenders were male or female, and cannot remember any conversations with any of them. The record contains no evidence that any employee of the Defendant observed visible signs of intoxication or otherwise knew that the Plaintiff was intoxicated, as the Plaintiff alleges. The record does not contain evidence of any blood work or test that would indicate the Plaintiff's blood alcohol level at the time of his spill.

## DISCUSSION

In support of its Motion for Summary Judgment, the Defendant argues that the Plaintiff's claim for punitive damages fails as a matter of law, that the Court should apply the Indiana Dram Shop Act rather than any substantive federal maritime law, that the Defendant is entitled to summary judgment on the Plaintiff's claim pursuant to the Indiana Dram Shop Act, and that the Defendant is entitled to summary judgment on the Plaintiff's claim pursuant to any applicable federal maritime principles of dram shop liability. The Plaintiff responds that he has a viable claim for punitive damages, that his claim is governed by general maritime law, that substantive maritime law applies to this case, that the Defendant is not entitled to summary judgment on the Plaintiff's general maritime claims, and that even under Indiana law, the Defendant's Motion fails. In reply, the Defendant argues that punitive damages are not available, that there is no maritime rule governing dram shop liability, that the Plaintiff cannot satisfy

---

**3.** On page 2 of his Response, the Plaintiff contends that he consumed approximately 14 to 15 beers, but on page 12 of his Response, that number grows to 16 beers. The Plaintiff's wife testified that he probably had more than 14 beers, but admitted that she did not count every beer he had that night and that

she was not with him at all times. The Plaintiff testified that he consumed approximately 14 beers while on the boat, but admitted that he did not keep track of the number of beers he was having and that his figure was an estimate.

the Indiana Dram Shop Act, and that even if the general maritime law is applicable to the Plaintiff's dram shop claim, the Plaintiff offers no evidence to defeat summary judgment.

## A. Jurisdiction

The Court begins by noting that the Plaintiff in his Complaint has premised jurisdiction in this federal Court upon diversity of citizenship pursuant to 28 U.S.C. section 1332, has made a demand for trial by jury, but has grounded his *in personam* claim in general maritime law, alleging that the Defendant breached its duty to exercise due care on his behalf with regard to its sale and monitoring of his consumption of alcoholic beverage and that, as a result of the Defendant's breach, the Plaintiff fell on an escalator while he was intoxicated. Thus, the Complaint suggests that the Plaintiff intends to proceed at law in this diversity case and has not invoked this Court's admiralty jurisdiction pursuant to 28 U.S.C. section 1333 and Federal Rule of Civil Procedure 9(h).[4] *See Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 665–66 (7th Cir.1999) (per curiam) (instructing that courts should look to the totality of the circumstances in determining whether a plaintiff intends to proceed under admiralty jurisdiction and that the inclusion of a jury demand suggests that a plaintiff intends to proceed at law).

## B. General Maritime Law

▮ The parties in this case dispute whether "dram shop" liability is available under general maritime law. Where there is no existing maritime rule that would govern an action, a court must determine whether it will fashion such a rule or instead apply existing state law. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314–16, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In *Wilburn*, the Court held that no federal admiralty rule existed governing warranties in marine insurance contracts, that there was no need to fashion one, and thus that state law would govern the construction of marine insurance contracts. *Id.* at 314–21, 75 S.Ct. 368. Having recognized that "[t]he control of all types of insurance companies and contracts has been primarily a state function since the States came into being," *id.* at 316, 75 S.Ct. 368, the Court reasoned that any attempt to unify insurance law on a nationwide basis by fashioning a federal

---

4. Although the Complaint does not invoke section 1333, the Plaintiff in his Response argues that this Court has admiralty jurisdiction. The Court notes that, under the "saving to suitors" clause in section 1333, plaintiffs may bring some suits in state courts, and thus this federal forum would be available in such cases when the requirements for diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled....").

In analyzing whether a federal court has admiralty jurisdiction under section 1333, a court must consider: (1) whether the incident giving rise to the injury occurred in navigable waters; (2) whether the incident posed a potential hazard to maritime commerce; and (3) whether the incident was substantially related to traditional maritime activity. *Great Lakes Dredge & Dock Co. v. City of Chicago*, 3 F.3d 225, 228 (7th Cir.1993). An affirmative answer to all three of these questions brings the claim under admiralty jurisdiction. *Id.* Personal injury claims by passengers have been subject to admiralty jurisdiction. *See In re Horizon Cruises Litigation*, 101 F.Supp.2d 204, 209 (S.D.N.Y.2000) (citing cases); *Bay Casino, L.L.C. v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y.1999) (citing cases); *Young v. Players Lake Charles, L.L.C.*, 47 F.Supp.2d 832, 834–35 (S.D.Tex.1999) (citing cases). Ordinarily, with admiralty jurisdiction comes the application of substantive maritime law, and absent a relevant statute, the general maritime law, as developed by the judiciary, applies. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

admiralty rule to govern the interpretation of policy provisions would be a complex and difficult endeavor ultimately requiring a choice among varied state approaches, *id.* at 319–20, 75 S.Ct. 368. The *Wilburn* Court also noted that, historically, the field of maritime torts, like the field of maritime contracts, has been left to the regulatory power of the States. *Id.* at 313, 75 S.Ct. 368.

The Defendant argues that there is no existing maritime rule regarding what is essentially dram shop liability, that application of maritime law is inappropriate here, and that, under *Wilburn*, this Court must apply state law. In support of its argument, the Defendant cites a decision of a United States District Court in California in which that court held that, although the court had admiralty jurisdiction over the passenger's tort action pursuant to general maritime law, no federal maritime dram shop rule existed and that, as a consequence, California's dram shop statute provided the substantive law governing the plaintiff's admiralty claim. *See Meyer v. Carnival Cruise Lines, Inc.*, 1994 WL 832006, at *4 (N.D.Cal. Dec.29, 1994) (citing *Wilburn*, 348 U.S. at 313, 75 S.Ct. 368). That court, thus, declined to fashion a federal maritime dram shop rule that would impose tort liability on sellers of alcohol for injuries resulting from their sales. *Id.* The Plaintiff, however, cites a decision of a United States District Court in Texas in which that court held that admiralty jurisdiction existed over a casino riverboat owner when a passenger who became intoxicated while drinking alcoholic beverage at the casino riverboat killed three persons while operating his automobile after departing the riverboat. *Young v. Players Lake Charles, L.L.C.*, 47 F.Supp.2d 832 (S.D.Tex.1999). The *Players* court determined that a defendant can be held liable under general maritime law for providing alcohol without adequate supervision, stating that because "there is an existing maritime rule governing the issue of dram shop liability," "there is no need to perform a *Wilburn* analysis to determine whether the Court must apply state dram shop law." *Id.* at 837. Thus, the briefs and arguments submitted by the parties demonstrate the unsettled nature of this area of federal law. Furthermore, in presenting this issue to the Court, the parties were not able to identify authority in the Seventh Circuit that would resolve this dispute, and the Court has been unable to find such.

In resolving this dispute, the Court finds the decision of the United States Supreme Court in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), to be instructive. In *Kermarec*, a plaintiff was injured while visiting a seaman on board a vessel berthed at a pier, and the Supreme Court held that the district court erred in applying New York substantive law where the petitioner was injured aboard a ship upon navigable waters. *Id.* at 628. The Court noted that even though jurisdiction was originally premised on diversity grounds, the cause was to be governed by standards of maritime law, stating "[i]f this action had been brought in state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties." *Kermarec*, 358 U.S. at 628, 79 S.Ct. 406. *See also Branch v. Schumann*, 445 F.2d 175 (5th Cir.1971); *King v. Alaska Steamship Co.*, 431 F.2d 994 (9th Cir.1970). *See also Pope & Talbot v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Although the Court in the present case declines to fashion a federal maritime dram shop rule, the Court finds it appropriate to apply fundamental principles of negligence law that have been adopted as general maritime law. Nevertheless, because state law may supplement

maritime law,[5] the Court will also consider the alternative theory of liability under the Indiana Dram Shop Act.

### 1. Negligence Standard

■ Under maritime law, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances." *Kermarec*, 358 U.S. at 632, 79 S.Ct. 406. Any alleged breach of duty to a passenger on a cruise ship sailing in navigable waters is a maritime tort and requires application of the general maritime law of the United States. *Kermarec*, 358 U.S. at 628, 79 S.Ct. 406; *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir.1989) (per curiam). Thus, according to fundamental principles of negligence law, which the general maritime law has adopted, a passenger plaintiff is owed a duty of ordinary care, and a defendant who fails to exercise ordinary care is liable for resulting harm that was reasonably foreseeable. *See Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980) (citing *S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 165 (5th Cir.1979)). Admiralty law does not differentiate between licensees and invitees. *Kermarec*, 358 U.S. at 631, 79 S.Ct. 406. And a plaintiff's negligence is considered only in mitigation of damages. *Id.* at 629, 79 S.Ct. 406; *see also Carey v. Bahama Cruise Lines*, 864 F.2d 201, 205 (1st Cir.1988) (citing cases).

■ Viewing the facts of this case in a light most favorable to the Plaintiff, the Court finds that the Plaintiff has presented evidence (although much of it is self-serving testimony by the Plaintiff) that he was served alcoholic beverage while on the Defendant's boat by the Defendant's employees, that he became intoxicated, that

he continued to be served alcoholic beverage, and that he was injured as a result. Thus, the Plaintiff has come forward with sufficient evidence from which a reasonable jury could conclude that the Defendant breached the duty of ordinary care it owed to the Plaintiff and that this breach caused the Plaintiff's injuries. Having found triable issues of fact, the Court finds it appropriate to deny the Defendant's Motion for Summary Judgment as to the Plaintiff's negligence claim under general maritime law.

### 2. Punitive Damages Standard

■ As to the issue of punitive damages under general maritime law, the Defendant argues that the Plaintiff is precluded from recovering punitive damages under general maritime law, but the Plaintiff argues that he is not barred. In support of their respective positions, the parties have highlighted federal case law.

Although this issue has not been clearly resolved by federal courts, the Court need not determine whether punitive damages are in fact available under general maritime law because, even assuming their availability, the Plaintiff has not come forward with evidence to show that the Defendant's conduct was intentional or wanton or that its conduct was reckless and amounted to a conscious disregard for the Plaintiff's rights. *See CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 699 (1st Cir.1995) ("Although rarely imposed, punitive damages have long been recognized as an available remedy in general maritime actions where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others.") (citations omitted); *id.* at 702 ("[I]n the absence of any relevant legislation, . . .

---

5. State law may not, however, work a material prejudice or detract from rights created by general maritime law. *See, e.g., Pope & Tal-*

*bot v. Hawn*, 346 U.S. 406, 409–10, 74 S.Ct. 202, 98 L.Ed. 143 (1953). ·

the uniformity principle in *Miles [v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990),] is inapplicable[, and] plaintiffs are entitled to forms of relief traditionally available under the general maritime law, including punitive damages."); *In re Horizon Cruises*, 101 F.Supp.2d 204, 210–14 (S.D.N.Y.2000) (considering the holdings in *Miles* and *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), and finding that punitive damages claims are available in general maritime actions). *See also Wanke v. Lynn's Transp. Co.*, 836 F.Supp. 587, 599–600 (N.D.Ind.1993) (explaining that under Indiana law the standard to recover punitive damages is a showing, by clear and convincing evidence, that the defendant subjected another person to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences, that the defendant knew of, but consciously disregarded, the likely injurious consequences of his course of conduct, or that the defendant's misconduct was willful and wanton). Summary judgment is, therefore, appropriate as to the Plaintiff's punitive damages claim under general maritime law.

## C. Indiana Dram Shop Law

### 1. Indiana's Dram Shop Liability Standard

■ Indiana's Dram Shop Act provides in relevant part:

(a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished. was a proximate cause of the death, injury, or damage alleged in the complaint.[6]

IND.CODE § 7.1–5–10–15.5 The Seventh Circuit has recently considered the actual knowledge requirement under this statute, stating:

In order to establish actual knowledge ..., Plaintiff must prove [Defendant]'s knowledge under a subjective standard, not an objective one. The determination of actual knowledge permits resort to reasonable inferences based upon a careful examination of the surrounding circumstances. However, proof of the statutory violation cannot be shown merely by evidence that the provider, in the exercise of reasonable care, should have known of the recipient's intoxication. The statutory requirement that the provider "knows that the other person is intoxicated," cannot be satisfied by evidence of such constructive knowledge.

. . .

Plaintiff must prove that the defendant was in position to observe the intoxicated recipient when alcohol was furnished and that the recipient was visibly intoxicated at the time.

*Culver v. McRoberts*, 192 F.3d 1095, 1098–99 (7th Cir.1999) (citations and internal quotation marks omitted).

---

6. Litigants bringing a claim under the Dram Shop Act are not precluded from also bringing common-law negligence claims. *Weida v.*

*Dowden*, 664 N.E.2d 742, 750 (Ind.Ct.App. 1996).

Even if the Court were to assume that the Defendant furnished alcoholic beverage to the Plaintiff, a fact that the Defendant disputes, the Court finds that the Plaintiff has not come forward with evidence that would demonstrate that the Defendant had actual knowledge that the Plaintiff was visibly intoxicated at the time the alcoholic beverage was furnished. Summary judgment is, therefore, appropriate on any claim for liability by the Plaintiff and against the Defendant under the Indiana Dram Shop Act.

### 2. Indiana's Punitive Damages Standard

■■■ As for punitive damages under the Indiana Dram Shop Act, the Indiana Supreme Court has affirmed the judgment of a trial court awarding compensatory and punitive damages in a case litigated under the Indiana Dram Shop Act. *See Picadilly, Inc. v. Colvin,* 519 N.E.2d 1217, 1221 (Ind. 1988). The *Picadilly* court stated:

In *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023, this Court addressed the permissible grounds for an award of punitive damages, stating:

We concede that punitive damages may be awarded upon a showing of willful and wanton misconduct, and we have no problem with Plaintiff's conception of willfulness and wantonness as not embodying malice, ill will or intent to injure. Rather, the perverseness that public policy will permit the courts to punish is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury.

As examples of such misconduct, our decision in *Traina* recognized the following: conscious indifference, heedless indifference, reckless disregard for the safety of others, reprehensible conduct, and heedless disregard of the consequences. *Id.*

Employing the rationale utilized in *Traina* for the review of an award for punitive damages, we must determine whether there was clear and convincing evidence from which the jury could find that Picadilly's conduct under the circumstances "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference to the consequences." *Id.*

*Picadilly,* 519 N.E.2d at 1221. Thus, mere negligence will not support an award of punitive damages in actions arising in tort; failing to act as a reasonable person would have acted does not constitute the kind of conduct punishable by punitive damages under Indiana law. *Austin v. Disney Tire Co.,* 815 F.Supp. 285, 287 (S.D.Ind.1993); *Traina,* 486 N.E.2d at 1023; *Lazarus Dept. Store v. Sutherlin,* 544 N.E.2d 513, 527 (Ind.Ct.App.1989). Rather, punitive damages may be awarded only upon a showing by "clear and convincing evidence that the defendant 'subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences.'" *Austin,* 815 F.Supp. at 287–88 (quoting *Bud Wolf Chevrolet v. Robertson,* 519 N.E.2d 135, 136 (Ind.1988)).

As to this Court's consideration of a motion for summary judgment on a claim for punitive damages, another judge in this District Court has ably summarized the standards as follows:

[A]nalysis ultimately turns on the actor's state of mind: whether a defendant knew of, but consciously disregarded, the likely injurious consequences of his course of conduct. *Dow Chemical v. St. Vincent Hospital and Health Care Center, Inc.,* 553 N.E.2d 144, 150–151 (Ind. Ct.App.1990); *Rose Acre Farms, Inc. v. Cone,* 492 N.E.2d 61, 70 (Ind.Ct.App. 1986), *trans. denied; Samuel v. Home*

*Run, Inc.,* 784 F.Supp. 548, 550 (S.D.Ind.1992). Courts must be circumspect in approaching summary judgment motions that turn on a party's state of mind, *Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 914 (7th Cir.1989); *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988), but the party on whom the burden of proof would rest at trial still bears the burden of coming forth with evidence sufficient to establish the requisite mental state. *Corrugated Paper Products v. Longview Fibre Co.,* 868 F.2d at 914; *Arndt v. Wheelabrator Corp.,* 763 F.Supp. 396, 401 (N.D.Ind.1991), *rev'd on other grounds sub nom., Bidlack v. Wheelabrator Corp.,* 993 F.2d 603 (7th Cir.1993). Further, since Indiana law requires a plaintiff to prove her entitlement to punitive damages by clear and convincing evidence, *Erie Ins. Co. v. Hickman by Smith,* 605 N.E.2d 161, the court must consider whether the plaintiff's summary judgment showing would allow a trier of fact to find that she has met that burden. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Wanke,* 836 F.Supp. at 600.

The Court has already found that the Plaintiff in this case has not come forward with evidence to show that the Defendant's conduct was intentional or wanton or that its conduct was reckless and amounted to a conscious disregard for the Plaintiff's rights. Given the Plaintiff's lack of such evidence, the Court finds that summary judgment is appropriate on any claim for punitive damages under the Indiana Dram Shop Act.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 31] is GRANTED for the Defendant and against the Plaintiff as to the Plaintiff's claim for punitive damages under general maritime law and any claim under the Indiana Dram Shop Act (whether for punitive damages or otherwise), but is DENIED as to the Plaintiff's negligence claim under general maritime law.

The Final Pre–Trial Conference remains set for January 7, 2002, at 1:00 p.m. (c.s.t.), and this matter remains set for jury trial beginning on January 14, 2002, at 8:30 a.m. (c.s.t.).