# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46735

BRANDI JONES, natural parent of R.N. )
and DASHA DRAHOS (a/k/a )
DASHA HUNTER), biological sister of R.N. )
Decedent, )
                                              )         Boise, August 2021 Term
                                                )
    Plaintiffs-Appellants, )
v.                                                 )         Filed: November 22, 2021
                                                )
TRACEY LYNN, )
                                                 )         Melanie Gagnepain, Clerk
    Defendant-Respondent, )
                                                )
and )
                                                )
C.N., B.L, and CHRISTOPHER NOSWORTHY, )
DALE ATKISSON, DOES I-X, )
                                                )
    Defendants. )
_____ )

Appeal from the District Court of the First Judicial District of State of Idaho, Kootenai County. Cynthia K. C. Meyer, District Judge.

The decision of the district court is <u>affirmed</u>.

James, Vernon & Weeks, P.A., Coeur d'Alene, attorneys for Appellants. Monica Brennan argued.

Law Offices of Mark Dietzler, Liberty Lake, attorneys for Respondents. Daniel Stowe argued.

_____

BEVAN, Chief Justice.

This appeal concerns the applicability of the Idaho Dram Shop Act to a federal maritime wrongful death case. R.N.'s mother, Brandi Jones, and sister, Dasha Drahos[1] (referred to hereafter

_____

[1] Dasha Drahos' status in the case requires more explanation. At some point, the district court dismissed Drahos from the case based on standing. On June 27, 2018, Drahos moved to reconsider. After hearings were held on July 11, 2018, and July 26, 2018, the district court granted Drahos' motion to reconsider. However, these documents are not included

as "Appellants" or "Plaintiffs"), filed a complaint against the Respondent, Tracy Lynn, alleging she recklessly and tortiously caused R.N.'s death (R.N. was sixteen years old at the time) by providing him with alcohol before he drowned in Lake Coeur d'Alene. Lynn filed a motion for summary judgment, asking the district court to dismiss the case because the Plaintiffs failed to comply with the notice requirements under Idaho's Dram Shop Act. The district court agreed and granted Lynn's motion for summary judgment after concluding there was no uniform body of federal maritime dram shop law that would preempt Idaho's Dram Shop Act. Thus, the Plaintiffs had to comply with the Dram Shop Act's notice requirements. The Plaintiffs timely appealed to this Court. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts relevant to this appeal. On July 21, 2015, R.N. went boating on Lake Coeur d'Alene with his friends C.N. and B.L. All three boys were sixteen years old at the time. The boat was owned by C.N.'s father. C.N., B.L., and R.N. obtained about 12 beers from an unknown source and consumed them while boating. Later, the boys stopped at Shooters, a restaurant and bar near the south end of the lake. Lynn allegedly provided C.N., B.L., and R.N. with an alcoholic drink[2] known as a "Shooter sinker" (also known as a "derailer" and "d tailer"). The boys left the restaurant and drank the derailer on the lake. At some point during the trip, R.N. jumped or fell off the boat into the water and drowned.

On May 2, 2017, the Plaintiffs filed a complaint against C.N. and B.L., as well as two adults who furnished alcohol to the boys, Lynn and her husband Dale Atkisson.[3] Relevant to this appeal are the Plaintiffs' claims against Lynn for "negligence, negligence per se, recklessness, and

---

in the record on appeal. Although the district court apparently granted Drahos' motion to reconsider, in its subsequent memorandum decision granting Lynn's motion for summary judgment, it stated that Drahos' "wrongful death claim was dismissed pursuant to a motion for summary judgment." Along with the wrongful death claim, the Plaintiffs' first amended complaint alleged "[a]s a direct and proximate result of each Defendant's negligence, negligence per se, carelessness, recklessness, heedless conduct and tortious conduct, Plaintiffs have incurred emotional distress damages attended by physical manifestations, including but not limited to emotional distress resulting from the delay in discovering [R.N.'s] death and the delay in discovering [R.N.'s] body." Because the district court continued to reference Drahos as a plaintiff after her wrongful death claim had been dismissed, she was presumably permitted to proceed on her emotional distress claim following the district court's order granting her motion to reconsider. Thus, Drahos is still referenced as an Appellant herein.

[2] There are inconsistent descriptions of the amount of alcohol in the derailer. In the complaint and amended complaint, the Plaintiffs alleged the drink contained 12 shots of hard alcohol. However, at the motion for summary judgment hearing, Plaintiffs' counsel said, "it is uncontested [the derailer] has six shots."

[3] Dale Atkisson passed away during these proceedings, the status of his estate is unknown.

2

tortious conduct," and a claim for "wrongful death."[4] R.N.'s father, Andrew Nault, filed a similar complaint that was later consolidated.[5] On July 12, 2017, the Plaintiffs filed a first amended complaint, adding a cause of action for spoliation of evidence against C.N. and B.L. The claims against Lynn remained the same at that time. On November 7, 2017, Lynn answered the first amended complaint, asserting the affirmative defense that "Plaintiffs' claims were barred because of, but not necessarily limited to, their failure to comply with pre-suit notice requirements of I.C. § 23-808."

On November 30, 2017, Lynn filed a motion for summary judgment, arguing that she did not receive proper notice of the Plaintiffs' intent to sue as required by Idaho's Dram Shop Act. The Plaintiffs opposed Lynn's motion, arguing that the Idaho Dram Shop Act does not apply to cases governed by federal maritime law.

While Lynn's motion for summary judgment was pending, on June 5, 2018, Jones moved to amend the complaint to add a claim of spoliation against Atkisson and Lynn. There is no ruling on this motion in the record.

On August 9, 2018, the district court entered a memorandum decision and order granting Lynn's motion for summary judgment. The district court concluded that Idaho's Dram Shop Act applies to these facts, which shields from liability "any person who sold or otherwise furnished" alcohol to the intoxicated person who did not receive notice by certified mail "within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail." I.C. § 23-808 (2), (5). Because the Plaintiffs did not provide timely notice, the district court granted Lynn's motion.

On August 15, 2018, the district court dismissed all claims against Lynn with prejudice. The district court did not execute a Rule 54(b) certificate at that time. The Plaintiffs moved to reconsider, arguing that the elements of maritime tort law apply to their claims and the element of proximate cause cannot be narrowed by the application of Idaho's Dram Shop statute. Lynn opposed the motion to reconsider. On December 20, 2018, the district court denied the motion after concluding that the Plaintiffs had resubmitted the same line of cases that the district court had previously rejected.

---

[4] Dasha Drahos' wrongful death claim was later dismissed.
[5] Andrew Nault did not join the current appeal.

On January 30, 2019, the Plaintiffs filed a notice of appeal. On March, 5, 2019, the district court issued its final judgment regarding all defendants. On March 21, 2019, the Plaintiffs filed an amended notice of appeal.

On December 3, 2019, nearly nine months after the district court entered final judgment, and almost a year after the court declined to reconsider Lynn's dismissal from the case, the Plaintiffs moved to amend the judgment under Idaho Rules of Civil Procedure 59 and 60. The Plaintiffs argued that while researching their brief for the appeal before this Court, they discovered a case that said, in dicta, that the notice provision of Idaho Code section 23-808(5) does not apply to the service of alcohol to minors. (Citing *Slade v. Smith Management Corp.*, 119 Idaho 482, 490, 808 P.2d 401, 409 (1991)). The district court concluded that the motion was untimely under either rule, leaving the only possible avenue for relief to be under Rule 60(b)(6), which requires "unique and compelling circumstances" to relieve a party from a final judgment. The district court found the Plaintiffs' arguments derived from *Slade* were not "unique and compelling circumstances" because the case was decided 29 years earlier. Even so, the district court went on to reject the merits of the Plaintiffs' claim, ultimately denying the motion to amend the judgment.

## II. ISSUES ON APPEAL

1. Did the Appellants comply with the Idaho Appellate Rules?
2. Did the district court err in holding that federal maritime law applied?
3. Did the district court err in holding that Idaho's Dram Shop Act applied rather than federal maritime general negligence law?
4. Did the district court err in holding that Idaho's Dram Shop Act precluded the Appellants' claims?
5. Should Lynn be precluded from raising the Idaho Dram Shop Act as a defense when she lied to police, spoliated evidence, and had unclean hands?
6. Does the time limitation in Idaho Code section 23-808(5) apply when the alcohol was furnished to minors?
7. Is Idaho Code section 23-808 unconstitutional?
8. Is either party entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *Owen v. Smith*, 168 Idaho 633, 485 P.3d 129, 136–37 (2021) (citing *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10

4

(2019)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing the "materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." I.R.C.P. 56(c)(1)(B). Summary judgment is improper "if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *Owen*, 168 Idaho at ___, 485 P.3d at 136–37 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). Even so, a "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

"[W]hen reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 485 P.3d 92, 106 (2021) (quoting *Drakos v. Sandow*, 167 Idaho 159, 162, 468 P.3d 289, 292 (2020)).

## IV. ANALYSIS

### A. The Appellants complied with the Idaho Appellate Rules.

Lynn first asks this Court to impose sanctions based on her allegation that the Appellants failed to file a timely brief. This Court may levy sanctions when a party violates the time limits prescribed by the Idaho Appellate Rules. I.A.R. 21. The Appellants' opening brief was originally due on April 30, 2020, and not filed until May 1, 2020. However, on April 21, 2020, this Court issued an emergency order due to the Covid-19 pandemic, which specified:

> In the event a deadline has been set by court order or rule and the last day for filing any document, holding any hearing, or doing any other thing or matter in any court falls on or between March 26, 2020 and April 30, 2020 when courts are reducing operations, the time for filing or doing any other thing in any court shall be extended until May 1, 2020.

The Appellants plainly complied with the extension granted by this emergency order.

Second, Lynn argues the Appellants violated the augmented record rules. This Court denied the Appellants' initial motion to augment the record on May 5, 2020. Appellants remedied the issue and filed an amended motion to augment the record, which this Court granted on June 4, 2020. On July 21, 2020, the Appellants filed an amended opening brief to reflect citations to the

augmented record. Because the Appellants complied with the time restraints imposed by the Court in this case, we deny Lynn's request for sanctions.

**B.    Lynn is precluded from raising new arguments concerning the district court's application of federal maritime law.**

Lynn raises an additional issue of whether the district court erred when it found that maritime law applied to these facts. In particular, Lynn attacks the district court's determination that Lake Coeur d'Alene is a navigable body of water. The Appellants counter that Lynn did not file a timely cross-appeal of the district court's application of federal maritime law, nor did she argue in opposition to that determination below. Thus, it was not properly preserved for appeal.

Although Lynn did not file a cross-appeal from the district court judgment, she may raise an additional issue on appeal so long as she is not seeking "reversal, vacation or modification of the judgment." I.A.R. 15(a); I.A.R. 35(b)(4). That said, Lynn did not directly challenge the district court's application of federal maritime law below. Lynn did attempt to incorporate co-defendant C.N's summary judgment argument against application of federal maritime law in her brief; however, Lynn specifically declined to take a formal position on whether federal maritime law applied during the proceedings below. Lynn admitted that she "need not take a formal position on whether maritime/admiralty law applies to the facts of this case but will concede it applies for the sake of argument." In addition, in Lynn's summary judgment reply brief, she stated that "irrespective of whether this [c]ourt decides the case falls under maritime/admiralty jurisdiction," the Idaho Dram Shop precluded the Plaintiffs' claims. Beyond that, even if we found review to be appropriate based on Lynn's separate statement that she was "incorporat[ing] Defendant [C.N.]'s argument against application of federal maritime/admiralty law," C.N.'s summary judgment motion and memorandum in support were not included in the record on appeal.

A party must raise both the issue and its position on that issue before the trial court for this Court to review it. *Eagle Springs Homeowners Assoc., Inc. v. Rodina*, 165 Idaho 862, 869, 454 P.3d 504, 511 (2019) (citing *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)). "The appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal." *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 751, 215 P.3d 457, 471 (2009) (quoting *W. Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002)). This Court will not presume error below in the absence of a record that is adequate to

review the appellant's claims. *Id*. Even though Lynn is not an appellant, in this instance she is held to the same standard; we have an inadequate record to determine what C.N. argued below.

The record establishes that Lake Coeur d'Alene's characterization as a navigable body of water does not appear to have been challenged by the parties before the district court. In general, "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must establish the water body's [1] location and of [2] connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534 (1995). Here, the district court's analysis focused almost exclusively on the second condition, connection to maritime activity, after finding that it was "*uncontroverted* that the alleged torts occurred on a navigable lake." (Emphasis added). Thus, we conclude that this issue has not been adequately preserved for us to rule on given this record. Whether Lake Coeur d'Alene is a navigable body of water sufficient to invoke federal maritime law is a question of law that we leave for another day. Given the state of the record, we will apply federal maritime law, as did the district court.

## C. The district court correctly applied the Idaho Dram Shop Act after concluding it did not conflict with any uniform federal common law.

The Appellants argue that federal maritime law preempts Idaho's Dram Shop Act. In particular, the Appellants allege that state law applies only if it adds remedies and does not diminish them. Because R.N.'s death is actionable under general maritime common law negligence, the Appellants contend that the Idaho Dram Shop Act does not apply, even though furnishing alcohol was Lynn's alleged negligent act.

In general, "[s]tate courts have concurrent jurisdiction with the federal courts to try cases at admiralty, but in doing so must apply federal maritime law rather than state law." *Fisk v. Royal Caribbean Cruises, Ltd*., 141 Idaho 290, 292, 108 P.3d 990, 992 (2005) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)). That said, "state law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law." *Id*. at 294, 108 P.3d at 994 (quoting *Floyd v. Lykes Bros. S.S. Co., Inc*., 844 F.2d 1044, 1047 (3rd Cir. 1988)). The test for determining when there is a conflict asks whether the state law "contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its

international and interstate relations." *Id.* (quoting *Southern Pacific Co., v. Jensen*, 244 U.S. 205, 216 (1917) (superseded on other grounds by statute)).

In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955), the United States Supreme Court faced the question whether the Court should create a judicial maritime rule or apply state law. Wilburn, the owner of a small houseboat used for commercial carriage, brought a fire loss claim against an insurance company after the houseboat was destroyed in a fire and the insurance company denied coverage. *Id.* at 311. The insurance company alleged Wilburn breached the policy because the policy precluded the boat from being sold, transferred, pledged, hired, chartered, or assigned "without written consent of the company" and required that the vessel "be used solely for private pleasure purposes." *Id.* The U.S. District Court entered judgment for the insurance company after holding "there is an established admiralty rule which requires literal fulfillment of every policy warranty so that any breach bars recovery." *Id.* at 312.

On appeal, the U.S. Supreme Court narrowed the issues presented as: "(1) is there a judicially established federal admiralty rule governing these warranties? [And] (2) [i]f not, should we fashion one?" *Id.* at 314. The Court ultimately found there was no established admiralty rule governing the insurance question presented:

> A mere cursory examination of the cases, state and federal, will disclose that through the years this common law doctrine, when accepted, has been treated not as an admiralty rule but as a general warranty rule applicable to many types of contracts including marine and other insurance.

*Id.* at 314–15.

The Court then answered the second issue, declining to fashion a new federal rule and concluding that because the United States Congress had failed to enact a national law, the problem was best left to the state legislatures. *Id.* at 321. We agree. Put another way, and the test which we affirmatively adopt today, holds that Idaho law governs in the absence of a (1) well-settled body of admiralty case law or (2) federal legislation covering the specific issue.

Consistent with this rationale, the U.S. Supreme Court later recognized:

> Traditionally, state remedies have been applied in accident cases of this order—maritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade. We hold, in accord with the United States Court of Appeals for the Third Circuit, that state remedies remain applicable in such cases .
> . . .

8

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 202 (1996). Thus, admiralty jurisdiction "does not result in automatic displacement of state law." *Id.* at 206 (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995)).

Despite *Wilburn Boat's* two-fold test, the Appellants argue that general maritime common law negligence should apply, not the Idaho Dram Shop Act, even though furnishing alcohol was involved in Lynn's alleged negligent act. Appellants rely on several Florida cases for their contention that when maritime claims are filed in state court under the concurrent jurisdiction afforded by the "savings to suitors" clause, 28 U.S.C. § 1333, the state court generally applies federal maritime common law rather than state law. *See, e.g.*, *Royal Caribbean Cruises, Ltd. v. Sinclair*, 808 So.2d 233 (Fla. 3rd DCA 2002) (plaintiff injured by ship's doctor not required to comply with Florida pre-suit screening requirements); *Beckman v. Rick's Watercraft Rentals,* 719 So.2d 1025 (Fla. 3rd DCA 1998) (maritime claim not governed by Florida statute of limitations); *Flying Boat, Inc. v. Alberto*, 723 So.2d 866 (Fla. 4th DCA 1998) (federal maritime law preempts employer's immunity under Florida workers compensation law).

In addition, as they did below, Appellants continue to assert that federal courts have overwhelmingly ruled that maritime law supplants state dram shop statutes that deviate from federal law. For example, *Young v. Players Lake Charles LLC*, was a case in which Louisiana law limited dram shop liability for dram shops that provide alcohol to others. 47 F. Supp. 2d 832, 834 (S.D. Tex. 1999). The Youngs were the family of a decedent who was killed by a drunk driver who became intoxicated on a river boat casino. The Court in *Young* found that since federal admiralty jurisdiction governed the suit under 28 U.S.C. § 1333, the dram shop law of Louisiana was inapplicable. *Id*. at 835. The Court went on to say that courts have held there has long existed a substantive federal dram shop cause of action under maritime law, and a defendant can be held liable at maritime law for providing alcohol without adequate supervision. *Id*. Ultimately, after discussing *Reyes v. Vantage Steamship Co.*, 558 F.2d 238 (5th Cir. 1977), *modified on reh'g*, 609 F.2d 140 (5th Cir. 1980), and *Thier v. Lykes Bros., Inc.*, 900 F. Supp. 864 (S.D. Tex. 1995), the *Young* Court held "there is an existing maritime rule governing the issue of dram shop liability." *Id*. at 837.

In *Reyes*, the Fifth Circuit addressed liability for the death of an intoxicated seaman who leaped from his vessel and drowned. The court held that the seaman's widow could maintain a cause of action for negligent rescue, then remanded the case for a determination on causation and

comparative negligence. 558 F.2d at 239. The court instructed the lower court on remand to consider the defendant's role in operating a "floating dram shop":

> It is the opinion of this Court that the practice revealed by this record of operating a floating dram shop makes a ship unseaworthy, and if not that, at least clearly negligent. Certainly the sea holds enough perils for a sailor, even a sober one. But for his employer to supply the beer without adequate control and then complain that Reyes was negligent for being drunk on board ship is indeed ironic.

*Id*. at 244–45. The court specifically instructed that the district court, in considering causation and the plaintiff's comparative negligence, weigh the "unseaworthiness or negligence [of defendants] with respect to the operation of a floating dram shop." *Id*.

In *Thier*, the plaintiff suffered severe injuries when a car driven by the defendants' chief officer of the vessel, while intoxicated, crashed on the way to a dinner. 900 F. Supp. at 866. Evidence revealed that his intoxication stemmed from a shipboard atmosphere that the court characterized as a "floating dram shop." The court found that the owners of the vessel were negligent in "allowing a party atmosphere to prevail onboard wherein ship's officers frequently had girlfriends and guests onboard together with a regularly stocked store of party supplies including alcoholic beverages." *Id*. The court ultimately found that the defendants were directly liable for their negligence in "failing to monitor alcohol consumption onboard, fostering a party atmosphere, and failing to prohibit drunk [naval] officers from driving." *Id*. at 879.

We affirm the district court, which rejected the Appellants' reliance on these cases after concluding they were based on *Reyes*, which failed to follow the analysis outlined by the U.S. Supreme Court in *Wilburn Boat*. The district court suggested it believed *Reyes* was wrongly decided for that reason, noting that the Fifth Circuit appeared to fashion its own rule by judicial fiat without citing any authority. The district court also determined that this line of cases stands for no more than the proposition that the owner of a ship can be held liable under maritime rules when the owner allows his boat to become a "floating dram shop." The district court recognized that "[s]uch a duty would not extend to Lynn, who did not own the boat."

In contrast to the authority relied on by the Appellants, the district court cited a series of cases that found that there is no uniform body of federal case law to preempt the state dram shop law. *See Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 146–47 (Iowa 2002); *Kludt v. Majestic Star Casino*, LLC, 200 F. Supp. 2d 973, 979 (N.D. Ind. 2001); *Vollmar v. O.C. Seacrets, Inc.*, 831 F. Supp. 2d 862, 870 (D. Md. 2011). In *Horak*, the Iowa Supreme Court determined:

10

> In wrestling with this decision, we are guided by the fundamental tenet of preemption doctrine that federal law will not preempt state law "absent a clear statement of congressional intent to occupy an entire field" or unless applying state law would conflict with or otherwise frustrate a federal regulatory scheme. *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 925 (Iowa 1994). Plainly there is no federal maritime statute comparable to Iowa Code section 123.92 governing the rights and liabilities of dram shops or third parties victimized by their patrons. And as the federal trial court in *Meyer* [*v. Carnival Cruise Lines, Inc.*, 1994 WL 832006,*1, 4 (N.D. Cal. Dec. 29, 1994)] observed, neither is there a consistent or uniform body of maritime common law imposing tort liability on sellers of alcohol for injuries resulting from their sales.

648 N.W.2d at 146–47. Likewise, in *Kludt*, the United States District Court for the Northern District of Indiana discussed the "unsettled nature of this area of federal law." 200 F. Supp. 2d at 979. In *Vollmar*, the United States District Court for the District of Maryland similarly recognized:

> It appears that federal trial courts have disagreed on whether there is a maritime dram shop law. *Compare Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 467 (E.D.N.Y. 1999) (finding that federal maritime law may be applied to a dram shop liability cause of action), *Young v. Players Lake Charles, L.L.C.*, 47 F. Supp.2d 832, 837 (S.D. Tex. 1999) ("there is an existing maritime rule governing the issue of dram shop liability"), *with Meyer v. Carnival Cruise Lines, Inc.*, No. C–93–2383 MHP, 1994 WL 832006, at *4 (N.D. Cal. Dec. 29, 1994) (finding no authority supporting federal maritime dram shop law and applying the state's dram shop law), *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 147 (Iowa 2002) (finding no federal maritime statute or maritime dram shop law preempting the state dram shop law), *Kludt v. Majestic Star Casino, LLC*, 200 F.Supp.2d 973 (N.D. Ind. 2001) (applying state dram shop law to supplement general maritime law).

831 F. Supp. 2d at 870.

The district court also identified a case from Alaska that addressed similar arguments to those raised in this case. In *Christiansen v. Christiansen*, 152 P.3d 1144 (Alaska 2007), the state dram shop act provided immunity for social hosts, but not for licensed alcohol sellers. The court determined that the same cases cited by the Appellants in this case—*Young*, *Reyes*, and *Thier*—failed to support the plaintiff's claim. The court concluded there was no general rule of maritime law that would abrogate the traditional social-host immunity rule as it existed at common law:

> Given the lack of analogous precedent in maritime law, the superior court found no "controlling federal rule" imposing liability on an unlicensed social host. We agree. In the absence of a controlling federal rule, we conclude that Almeria has not demonstrated that a characteristic feature of maritime law would be materially prejudiced by applying AS 04.21.020 in this case.

152 P.3d at 1147.

11

The clear conflict among these authorities makes one thing eminently clear: there is no well-settled body of admiralty case law regarding the applicability of state dram shop statutes. The district court recognized this, finding no uniform body of federal maritime dram shop law which would preempt Idaho's Dram Shop Act. At a hearing below, the Appellants' counsel admitted there is a split in authority whether there is a federal dram shop law, but urged the district court to follow what they argued is the majority approach among several states and federal circuits. We hold the district court did not err by declining to pick and choose from conflicting federal authority on the issue. In denying the motion to reconsider, the district court reaffirmed its prior acknowledgment that it was not bound to accept the Fifth Circuit precedent on matters of federal law. The district court recognized there are two lines of cases that reflect there is no uniform body of federal case law that could preempt state law on point.

That said, Appellants contend that the district court erred by glossing over *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), in which the U.S. Supreme Court held that no state court law would apply when it detracted from a remedy for plaintiffs. Because the Idaho Dram Shop Act does not provide its own remedy, Appellants allege that it detracts from the general negligence remedy allowable under federal maritime law. Lynn counters that the Appellants are misrepresenting *Yamaha*. We agree. *Yamaha* merely recognized that state remedies are available to supplant federal maritime law when there are no federal remedies available. 516 U.S. at 215–16. The district court reiterated this point:

> To the extent that Plaintiffs continue to argue that there is a conflict between the application of Idaho's Dram Shop Act and the principles of federal maritime law, Plaintiffs' argument is not well taken. The [c]ourt previously determined that under the facts of this case no conflict existed between Idaho's Dram Shop Act and general federal maritime law that would preclude the application of state law. . . . At the hearing on Plaintiffs' motion [to reconsider], Plaintiffs cited to *Yamaha Motor Corp., U.S.A. v. Calhoun* for the proposition that "state remedies remain applicable . . . and have not been displaced by the federal maritime wrongful death action." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 202 (1996). The [c]ourt notes that the application of Idaho's Dram Shop Act does not automatically limit a plaintiff's recovery. However, in the present case, Plaintiffs' failure (inability) to comply with the deadlines in the Idaho Tort Claims [sic] Act ultimately barred Plaintiffs' claims against Defendant Lynn.

The district court did not err in applying Idaho law, even though that led to a statutory bar to the Appellants' ability to pursue a claim in this case. *See Wilburn Boat*, 348 U.S. at 320–21. We affirm

12

the district court's application of the Idaho Dram Shop Act because there is no uniform federal law on the issue.

**D. The district court did not err in holding that the Appellants' claims were barred because they failed to comply with the Idaho Dram Shop Act.**

Next, Appellants argue they did not have to comply with the notice requirements of Idaho Code section 23-808 because Lynn is not a "dram shop" nor is she a "social host." Appellants contend that Lynn knowingly sold alcohol to minors at the dock, and that to consider her either a "dram shop" or "social host" would provide her with protection not intended by the statute. Lynn argues that the Appellants wrongly focus on "dram shop" and "social host" labels instead of clear legislative intent as stated in the plain words of the statute.

In 1986, the legislature enacted Idaho Code section 23-808, also known as the Idaho Dram Shop Act, which outlines the civil liability imposed on a furnisher of alcoholic beverages for a plaintiff's injuries caused by an intoxicated person. Section 23-808 reads:

> LEGISLATIVE FINDING AND INTENT — CAUSE OF ACTION. (1) The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability; provided, that the legislature finds that the furnishing of alcoholic beverages may constitute a proximate cause of injuries inflicted by intoxicated persons under the circumstances set forth in subsection (3) of this section.
> . . . .
> (3) A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if:
>
> > (a) The intoxicated person was younger than the legal age for the consumption of alcoholic beverages at the time the alcoholic beverages were sold or furnished and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known at the time the alcoholic beverages were sold or furnished that the intoxicated person was younger than the legal age for consumption of the alcoholic beverages; or
> >
> > (b) The intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.
>
> (4) (a) No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives.
>
> . . . .

13

(5) No claim or cause of action may be brought under this section against a person who sold or otherwise furnished alcoholic beverages to an intoxicated person unless the person bringing the claim or cause of action notified the person who sold or otherwise furnished alcoholic beverages to the intoxicated person within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail that the claim or cause of action would be brought.

. . . .

I.C. § 23-808.

"The Dram Shop Act addresses proximate cause, not duty or breach of duty." *Idaho Dep't of Lab. v. Sunset Marts, Inc.*, 140 Idaho 207, 211, 91 P.3d 1111, 1115 (2004). Idaho's dram shop law narrowed the application of general tort liability of *a person* furnishing alcohol to a tortfeasor by restricting the scope of the proximate cause inquiry and requiring parties to provide notice within 180 days after the cause of action arose. I.C. § 808(3)–(5).

In *Fell v. Fat Smitty's LLC*, a patron sued a bar owner, asserting a claim for negligence after he was stabbed by another bar patron. 167 Idaho 34, 467 P.3d 398 (2020). The bar moved for summary judgment, arguing among other things, that the patron failed to provide timely notice under Idaho Code section 23-808(5). *Id*. at 36, 467 P.3d at 400. The patron countered that the notice provision was inapplicable because they did not plead a dram shop cause of action, rather, they were pursuing a common law negligence claim. *Id*. On appeal, this Court held the patron had to comply with the notice requirements of section 23-808(5) because the Idaho Dram Shop Act provides the exclusive remedy for a plaintiff injured by an intoxicated person against the vendor of the alcohol beverages. *Id*. at 37, 467 P.3d at 401.

Here, both parties agree that Idaho Code section 23-808 is clear and unambiguous.

The interpretation of a statute is a question of law over which we exercise free review. *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 139 Idaho 65, 72 P.3d 905 (2003). It must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Id*. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. *Id*.

*Idaho Dep't of Lab. v. Sunset Marts, Inc.*, 140 Idaho 207, 211, 91 P.3d 1111, 1115 (2004).

The Appellants concentrate their argument on the stated purpose of section 23-808, which is to "limit dram shop and social host liability," and argue that Lynn is neither a "dram shop" nor a "social host." Appellants contend that an everyday understanding of the word "Dram Shop" would lead one to think of a commercial bar where alcohol is sold. Appellants also suggest that

Lynn does not meet the definition of a "social host," which would presumably consist of a party at a residential home or an office party. Appellants argue there was no social gathering in this case, nor was R.N. a guest in Lynn's home.

The Appellants' focus on the definitions of "dram shop" or "social host," is misplaced. As the district court recognized, the plain language of Idaho's Dram Shop Act specifies that it applies to "*a person* who sold *or otherwise furnished* alcoholic beverages . . . ." I.C. § 23-808(5) (emphasis added). If the legislature had intended to limit the Act's application to only social hosts, it could have repeated the words "dram shop or social host" rather than use the different, longer, and more expansive phrase "any person who sold or otherwise furnished alcoholic beverages." "[T]his Court has been reluctant to second-guess the wisdom of a statute and has been unwilling to insert words into a statute that the Court believes the [L]egislature left out, be it intentionally or inadvertently." *Stanley v. Indus. Special Indem. Fund*, ___ Idaho ___, ___, 481 P.3d 731, 735 (2021) (quoting *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 89, 356 P.3d 377, 382 (2015)).

The heart of the Appellants' negligence claim against Lynn stemmed from her furnishing alcohol to R.N., B.L., and C.N. Thus, the district court concluded the Idaho Dram Shop applied, including the notice provision of subsection (5). The district court's analysis tracks this Court's recent decision in *Fat Smitty's*, which mandated application of Idaho's Dram Shop Act when a negligence cause of action was brought against the vendor of alcohol, even though that case involved a saloon instead of a person. 167 Idaho at 37, 467 P.3d at 401. In arguing *Fat Smitty's* does not apply, the Appellants focus on the Court's use of the word "vendor" and argue that Idaho Code section 23-808 is not intended to protect individuals like Lynn. Still, as pointed out by Lynn, "[h]ad the legislature intended to limit only *certain* dram shop and social host liability, it could have stated so within the text itself." (Quoting *Fat Smitty's*, 167 Idaho at 40, 467 P.3d at 404). Ultimately, the statute's plain language provides that it applies to "any person who sold or otherwise furnished alcoholic beverages."

The district court correctly concluded the Idaho Dram Shop Act encompassed Lynn's conduct because she furnished alcohol to R.N. The Act requires that no claim may be brought against the furnisher of alcoholic beverages unless notice is provided "within one hundred eighty (180) days from the date the claim or cause of action arose." I.C. § 23-808(5). The Appellants did not provide timely notice to Lynn under the statute, thus, we affirm the district court's dismissal of their claims against Lynn.

15

Alternatively, Lynn asserts that Idaho's Dram Shop Act bars the Appellants' claims because R.N. was intoxicated before his death. Having ruled that the Appellants' failure to provide notice under Idaho Code section 23-808(5) precludes their claims, we will not address this additional argument.

**E.    The record does not support Appellants' claims for spoliation and unclean hands.**

The district court determined that Idaho's Dram Shop Act applies to these facts, and it shields from liability "any person who sold or otherwise furnished alcohol" who did not receive notice "within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail." (Citing I.C. § 23-808). On appeal, Appellants argue that even if the Dram Shop Act applies here, Lynn should not be permitted to avail herself of the defense because she intentionally lied to police and spoliated the evidence and has unclean hands.

*a.    Spoliation of evidence*

On June 5, 2018, Jones moved to amend the complaint to add a claim of spoliation against Dale Atkisson and Tracy Lynn. In Lynn's summary judgment reply brief, she referenced that Jones had moved to amend the complaint requesting oral argument, but noted that she had not set her motion for hearing. Presuming that Jones would try to argue her motion at the upcoming summary judgment hearing, Lynn incorporated Defendant C.N.'s arguments and authorities on spoliation and asked the district court to dismiss the claim. There is no ruling on the motion to amend the complaint or a second amended complaint in the record. There is also no reference to either document being filed in the case summary. However, the judgment dismissing the claims against Lynn references a "[Second] Amended Complaint." In addition, at a July 11, 2018, hearing on various motions, Lynn's counsel referenced the added claim, stating: "[t]he negligence claims, the spoliation claim have now been added."

Although it is unclear whether Jones was ultimately permitted to file a second amended complaint, the district court did discuss spoliation in its memorandum decision. After the district court held that the Appellants' claims were precluded based on their failure to comply with the notice requirements of Idaho's Dram Shop Act, the district court analyzed Jones' spoliation claims. That said, we do not know whether that analysis pertained to the claims lodged against C.N., or the later allegations against Lynn. To the extent the analysis includes Lynn, we will address the Appellants' arguments.

16

"The spoliation doctrine is a general principle of civil litigation which provides that upon a showing of intentional destruction of evidence by an opposing party, an inference arises that the missing evidence was adverse to the party's position." *Waters v. All Phase Const.*, 156 Idaho 259, 263, 322 P.3d 992, 996 (2014) (quoting *Stuart v. State*, 127 Idaho 806, 816, 907 P.2d 783, 793 (1995)). "[W]e recognized the spoliation doctrine as a form of admission by conduct [in that] . . . the party is said to provide a basis for believing that he or she thinks the case is weak and not to be won by fair means." *Id.* (quoting *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 824, 87 P.3d 930, 933 (2003)).

The Appellants don't identify how much time passed before they were aware of Lynn's involvement, however, they claim that "[d]ue to Lynn's lies to the police in essence hiding and spoliating evidence, Jones and Drahos could not have discovered the name of the appropriate defendant prior to the 180-day time limit set forth in I.C. § 23-808." In support of their claim, the Appellants assert this Court should consider the amended declaration of Detective Terry Campbell, even though it was not admitted by the district court. The district court struck Detective Campbell's original declaration because it contained hearsay. The Appellants responded by filing an amended declaration after their motion to reconsider, however, the district court determined that the Appellants cited no authority or provided any argument on why the document should be admitted. In addition, the district court concluded the amended declaration, "to the extent it would be admissible," had no bearing on the issues raised in the motion to reconsider. We decline to consider the amended declaration on appeal because it was properly not admitted below.

Ultimately, the district court rejected the Appellants' claim for spoliation after concluding that under federal maritime law, spoliation is an evidentiary remedy only available when a party destroys evidence, generally after a lawsuit has been filed. Because the court found that spoliation of evidence was an evidentiary sanction, not a tort, it determined that it did not apply, thus, the "Defendants [were] entitled to summary judgment on Plaintiff's spoliation claim as a matter of law."

The district court's decision tracks this Court's precedent declining to adopt first-party spoliation as an independent tort. In *Raymond v. Idaho State Police*, this Court distinguished between first-party spoliation and third-party spoliation, recognizing that first-party spoliation of evidence "is a general principle of civil litigation which provides that upon a showing of intentional destruction of evidence by an opposing party, an inference arises that the missing evidence was

17

adverse to the party's position." 165 Idaho 682, 686, 451 P.3d 17, 21 (2019) (quoting *Waters v. All Phase Const.*, 156 Idaho 259, 263, 322 P.3d 992, 996 (2014)). The Court held that the remedy for such first-party misdeeds is not an independent cause of action. Rather, it prompts the remedy of instructing the jury that it may "reasonably infer that evidence deliberately or negligently destroyed by a party was unfavorable to th[at] party's position. . . ." *Id.* The Court went on to formally adopt the tort of intentional interference with a prospective civil action by spoliation of evidence by a third party. *Id.*

Appellants claim their argument is much like the third-party spoliation tort remedy because even though Lynn lied to police and was sued within the statute of limitations, she was dismissed from the case because of the alleged defects in prelitigation notice requirements. Thus, Appellants allege they cannot have an evidentiary remedy in the litigation and ask this Court to follow the reasoning in *Raymond*, which allows third-party tort spoliation to "provide a remedy for spoliation victims" who would "otherwise be unable to recover in their underlying lawsuits" and to "deter future spoliation." *Id.* (citing *Raymond*, 165 at 687, 451 P.3d at 22). Because the Appellants have not specified how long it took them to learn Lynn and Atkisson had provided alcohol to the boys, there is no way to determine the extent to which Lynn either made the 180-day notice requirements more difficult or impossible by lying to police. We decline to adopt a new remedy based on the record before us, particularly when it is unclear whether the district court's analysis even pertained to Lynn.

### b. Unclean hands

The district court also held that the unclean hands doctrine is inapplicable to the facts here because the notice provision of Idaho Code section 23-808(5) is not an equitable remedy, it is a statutory bar to relief, and the doctrine of unclean hands only applies against a person pursuing an equitable remedy.

"The unclean hands doctrine 'stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.' " *Countrywide Home Loans, Inc. v. Sheets*, 160 Idaho 268, 273, 371 P.3d 322, 327 (2016) (quoting *Ada Cnty. Highway Dist. v. Total Success Investments, LLC*, 145 Idaho 360, 370, 179 P.3d 323, 333 (2008)).

> In determining if [the clean hands] doctrine applies a court has discretion to evaluate the relative conduct of both parties and to determine *whether the conduct*

18

*of the party seeking an equitable remedy* should, in the light of all the circumstances, preclude such relief. A trial court's decision to afford relief based on the unclean hands doctrine, or to reject its application, will not be overturned on appeal absent a demonstration that the lower court abused its discretion.

*Ada Cnty. Highway Dist.*, 145 Idaho at 371, 179 P.3d at 334 (emphasis added) (quoting *Sword v. Sweet*, 140 Idaho 242, 251, 92 P.3d 492, 501 (2004)).

On appeal, Appellants simply state, "[m]oreover, [Lynn] has unclean hands as set forth in *Sword v. Sweet*, 140 Idaho 242, 92 P.3d 492 (2004), *Ada Highway District*, 145 Idaho at 370, 179 P.3d at 333; *Republic Molding Corp. V. B. W. Photo Utilities*, 319 F.3d 347 (1963)." The Appellants failed to adequately support their claim with cogent argument. "[I]f the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see also Inama v. Boise Cnty. ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003) (refusing to address a constitutional takings issue when the issue was not supported by legal authority and was only mentioned in passing). We conclude that Appellants' claim of unclean hands suffers from this failing. Even if we were to reach the merits of the Appellants' arguments, we hold the district court correctly concluded that the doctrine of unclean hands did not apply because the Appellants were not pursuing an equitable remedy.

## F. The notice requirements under Idaho Code section 23-808(5) still apply when alcohol is furnished to minors.

Next, the Appellants argue that the 180-day limitation in Idaho Code section 23-808(5) does not apply to adults who knowingly provide alcohol to minors. In support, the Appellants cite the following dicta from *Slade v. Smith Management Corp.*:

the legislature was equally specific that there was no curtailment of the right to file an action for furnishing alcoholic beverages to a person below the legal age for consuming alcoholic beverages where doing so caused injury, death or damage.

119 Idaho 482, 490, 808 P.2d 401, 409 (1991) (citing I.C. § 23–808(1), (3)(a)).

Based on this statement, the Appellants ask this Court to conclude that the 180-day notice requirement of section 23-808 does not apply to limit a remedy to persons who knowingly provide alcohol to minors. Yet the statute does not carve out any exception for minors. To limit dram shop and social host liability, the legislature recognized minors in the statute, and prescribed that "the furnishing of alcoholic beverages may constitute a proximate cause of injuries inflicted by intoxicated persons" if:

19

The intoxicated person was younger than the legal age for the consumption of alcoholic beverages at the time the alcoholic beverages were sold or furnished and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known at the time the alcoholic beverages were sold or furnished that the intoxicated person was younger than the legal age for consumption of the alcoholic beverages . . . .

I.C. §23-808(3)(a).

This section refers to the "intoxicated person." Thus, subsection (5), which also refers to the "intoxicated person" applies to this section equally and *Slade* merely holds that a cause of action is not curtailed—except as limited by the 180-day provision. Because the legislature did not carve out any exception specifying the notice requirement did not apply to minors, we will not write one into the statute.

**G.  The Appellants have failed to prove that Idaho Code section 23-808(5) is unconstitutional.**

Last, Appellants argue that Idaho Code section 23-808(5) is unconstitutional. "The party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (citation omitted). "It is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Id.*

The constitutionality of Idaho's Dram Shop Act was previously addressed by this Court in *Coghlan v. Beta Theta Pi Fraternity*, where an eighteen-year-old student sued her sorority, other fraternities and sororities, and the school, after she became intoxicated at a party and fell down a fire escape. 133 Idaho 388, 392–93, 987 P.2d 300, 304–05 (1999). The district court held the unambiguous language of Idaho Code section 23-808 bars suits by intoxicated persons against the server of alcohol and granted summary judgment for the fraternities. Coghlan appealed, challenging the constitutionality of section 23-808 on various grounds: (1) the statute violates the equal protection clause because it permits recovery by third parties but not intoxicated persons; (2) the statute impermissibly revives the doctrine of contributory negligence; and (3) that the statute impermissibly infringes on the right to a trial by jury guaranteed by article I, section 7 of the Idaho Constitution. This Court affirmed the district court's holding that Idaho's Dram Shop Act

20

prohibited Coghlan from bringing a cause of action against the providers of alcohol. *Id*. at 394, 987 P.2d at 306. The Court rejected Coghlan's constitutional claims.

First, the Court held that Idaho Code section 23-808(4)(a) does not violate the equal protection guarantees of the Idaho and United States Constitutions even though it allows recovery by third parties but not intoxicated persons. *Id*. at 395, 987 P.2d at 307. The Court held that rational basis scrutiny applied, and held that the disparate treatment of intoxicated persons under section 23-808 is rationally related to legitimate governmental purposes. *Id*. at 397, 987 P.2d at 309. The Court also rejected Coghlan's claim that section 23-808 impermissibly revived the doctrine of contributory negligence. *Id*. Third, the Court held that the Idaho Dram Shop Act does not violate Article 1, Section 7 of the Idaho Constitution because the claimed cause of action—alcohol provider liability for an injury suffered by the intoxicated person to whom the alcohol was provided—did not exist at common law at the time the Idaho Constitution was adopted. *Id*. at 398, 987 P.2d at 310.

The Appellants make three constitutional arguments here. First, the Appellants claim that Idaho Code section 23-808(5) is unconstitutional when applied to minors. Second, Appellants argue that section 23-808(5) is unconstitutional because it violates Article 3, Section 19 of the Idaho Constitution. Third, Appellants claim that the statute violates equal protection and due process standards under the Idaho and United States Constitutions. Even if the statute survives constitutional scrutiny, the Appellants allege subsection (5) contravenes the stated purpose of Idaho Code section 23-808, and must be stricken.

> a. *Whether Idaho Code section 23-808(5) is unconstitutional when applied to minors.*

Appellants argue that Idaho Code section 23-808(5) is unconstitutional as applied to minors. The Appellants rely on *Slade* to assert, "the Supreme Court recognized this distinction when stating that the legislature was 'specific' in not curtailing the 'right' as it applied to supplying alcohol to minors." Appellants urge this Court to consider this "guidance" when considering the constitutionality of Idaho Code section 23-808 as it applies to service to minors rather than service to obviously intoxicated persons. Appellants did not provide any other argument or authority for their assertion that section 23-808(5) is unconstitutional as applied to minors beyond their interpretation of the Court's statements in *Slade*, which we rejected above. "The party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a

21

strong presumption of validity." *Olsen*, 117 Idaho at 709, 791 P.2d at 1288. The Appellants have failed to meet this burden and we therefore affirm the district court as to this assertion.

> b. *Whether Idaho Code section 23-808(5) is unconstitutional because it violates Article III, Section 19 of the Idaho Constitution.*

Appellants argue that Idaho Code section 23-808 violates Article III, Section 19 of the Idaho Constitution because it limits a person's ability to pursue a common law dram shop cause of action with respect to a sub-class of claimants bringing negligence claims. In support, Appellants point out the inconsistencies between the notice requirements under section 23-808(5) and the notice requirement of the Idaho Tort Claims Act, which contains a "reasonableness provision," allowing the notice period to run from the "date the claim arose or reasonably should have been discovered, whichever is later." I.C. § 6-906.

Article III, Section 19, of the Idaho Constitution prohibits "local and special laws" on several issues. This Court has outlined three characteristics of special laws:

> First, a special law applies only to an individual or number of individuals out of a single class similarly situated and affected or to a special locality. It is important to note that a law is not special simply because it may have only a local application or apply only to a special class if, in fact, it does apply to all such cases and all similar localities and to all belonging to the specified class to which the law is made applicable. Second, we have found that when the Legislature pursues a legitimate interest in protecting citizens of the state in enacting a law, then it is not special. Lastly, courts must determine whether the [statute's] classification is arbitrary, capricious, or unreasonable. If a law's classification is arbitrary, capricious, or unreasonable, it is a special law. In assessing the legitimacy of a particular law, as well as whether it is arbitrary, capricious, or unreasonable, this Court has on occasion examined not just the law itself, but its legislative history.

*Citizens Against Range Expansion v. Idaho Fish And Game Dep't*, 153 Idaho 630, 636, 289 P.3d 32, 38 (2012) (internal citations and quotations omitted).

The district court found that Idaho's Dram Shop Act is neither a local nor a special law because it applies generally to all members of the class it creates, and it is not arbitrary, capricious, or unreasonable. We agree. As the district court noted, the Appellants failed to identify which fundamental right is allegedly encroached upon. Their argument on appeal suffers from the same flaw. Without the ability to identify what fundamental right was infringed upon, we affirm the district court's holding that the Idaho Dram Shop Act does not violate Article III, Section 19 of the Idaho Constitution.

> c. *Whether Idaho Code section 23-808 violates equal protection and due process.*

22

Next, Appellants argue that Idaho Code section 23-808(5) violates the equal protection clause of the Idaho and United States Constitution because it discriminates between claimants who notify the negligent seller or furnisher of alcohol and those who do not. The Appellants also claim that the notice by "certified mail" requirement irrationally discriminates between negligent purveyors of alcohol who will be held liable and negligent purveyors who will not, even though they may have engaged in the same degree of negligence. The district court declined to issue an advisory opinion on this argument because the Appellants gave no notice under the Idaho Dram Shop Act in this case. We likewise decline to issue an advisory opinion on this hypothetical issue. *See PHH Mortg. v. Nickerson*, 160 Idaho 388, 399, 374 P.3d 551, 562 (2016) (determining it would be inappropriate for this Court to issue an advisory opinion on a hypothetical issue presented by the appellants).

As to the merits of this claim directly, this Court has evaluated whether the Idaho Dram Shop Act violates equal protection, concluding:

> This Court has also previously recognized that "[n]ot every legislative classification which treats different classes of people differently can be said to be 'discriminatory,' much less 'obviously' 'invidiously discriminatory.' " *State v. Beam*, 115 Idaho 208, 212, 766 P.2d 678, 682 (1988). "For a classification to be 'obviously' 'invidiously discriminatory,' it must distinguish between individuals or groups either odiously or on some other basis calculated to excite animosity or ill will." *Id.* I.C. § 23-808 limits dram shop liability to those persons who are innocently injured as a result of the negligent provision of alcohol. Preventing intoxicated persons from recovering from the negligent providers of alcohol furthers this purpose and is not calculated to excite animosity or ill will. The classification at issue here is neither invidiously discriminatory nor does it involve a fundamental right.

*Coghlan*, 133 Idaho at 396, 987 P.2d at 308. Though the equal protection claim in *Coghlan* concerned the disparate treatment of intoxicated persons, the Court held it was not invidiously discriminatory, thus, it was subject to scrutiny under the rational basis standard. *Id.* Likewise, the disparate treatment of claimants who notify the negligent furnisher of alcohol and those who do not is not invidiously discriminatory, thus, rational basis test applies.

On rational-basis review, courts do not judge the wisdom or fairness of the legislation being challenged. *Id.* The United States Supreme Court has held that "[o]n rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.' " *Id.* (quoting *Federal Communications Comm'n v.*

23

*Beach Comm'n Inc.*, 508 U.S. 307, 314–15 (1993)). "Under the rational basis test, a classification will withstand an equal protection challenge if there is any conceivable state of facts which will support it." *Id*. at 396–97, 987 P.2d at 308–09 (internal quotation omitted).

The district court determined that Idaho had a legitimate and rational basis for enacting Idaho's Dram Shop Act: it wanted to limit liability upon purveyors of alcohol and implicitly leave liability for injuries caused by inebriated persons upon the person who allowed themselves to become inebriated: the inebriate himself. The exceptions to this rule are limited to those who lack capacity at the time they were served or who are otherwise not allowed to drink alcohol: obviously intoxicated persons and minors. We agree with the district court's holding that these bases are enough to satisfy rational basis review.

That said, the Appellants urge us to reject the ordinary presumption of constitutionality because the statute "irrationally and arbitrarily discriminates against a class of tort victims for the benefit of a segment of the business community selling an intoxicating drug. [Thus,] [t]he judicial deference to the judgment of the legislature is unwarranted and unwise under such circumstances." Appellants claim the Court must step forward to examine and remedy the improvident decisions of the legislature, especially under such circumstances where factors justify a constitutional review. Despite stating that "[s]uch factors exist here," Appellants do not fully articulate what factors mandate such review, nor do they cite any authority for why this Court should reject the well-established principle that legislative acts are presumed to be constitutional. *Olsen*, 117 Idaho at 709, 791 P.2d at 1288. Without authority or express argument in support of the Appellants' position, we affirm the district court's conclusion, based on the standard of rational basis review articulated above.

The Appellants separately claim that Idaho Code section 23-808(5) violates due process. That said, the Appellants did not support this claim with any argument or authority. "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Inama v. Boise Cnty ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003)). Appellants also failed to provide argument on this issue before the district court. After rejecting the Appellants' arguments below, the district court recognized: "Although Plaintiff states that I.C. § 23-808(5) violates the Due Process Clauses of the Idaho and Federal Constitutions, Plaintiff

24

never articulates any reasoning to support that conclusion." For the same reasons, we decline to consider the Appellants' due process claims on appeal.

>    *d. If Idaho Code section 23-808(5) survives constitutional scrutiny, whether subsection (5) contravenes the stated purpose of Idaho Code section 23-808, renders the statute ambiguous, and should be stricken.*

Last, Appellants claim that subsection (5) contravenes the stated purpose of Idaho Code section 23-808. In describing the legislative intent behind section 23-808, the statute provides:

> The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability; provided, that the legislature finds that the furnishing of alcoholic beverages may constitute a proximate cause of injuries inflicted by intoxicated persons under the circumstances set forth in subsection (3) of this section.

I.C. § 23-808(1).

Appellants argue this reflects the legislative balance between shielding furnishers of alcohol from potential liability, while protecting victims and the public welfare by providing that a victim may maintain a cause of action where the harm resulted from a purveyor of alcohol furnishing alcohol to an obviously intoxicated person. Subsection (3)(b) provides that a person may maintain a cause of action against the furnisher of alcohol where "[t]he intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated."

Appellants allege that they may seek recovery against Lynn under section 23-808(3)(b); however, subsection (5) then strips their statutory right to bring a claim. Appellants argue that there is an irreconcilable conflict between section 23-808(5) and subsections (1) and (3), and that this conflict can only be resolved by allowing the more specific statutes—Idaho Code section 23-808(1) and (3)—to prevail to the exclusion of subsection (5).

> A basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general. Thus, the more general statute should not be interpreted as encompassing an area already covered by one which is more specific.

*Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 289, 429 P.3d 168, 177 (2018) (internal citations omitted).

25

The stated purpose of the Idaho Dram Shop Act is to limit a person's ability to sue furnishers of alcohol. Thus, the 180-day notice requirement in subsection (5) aligns with the purpose of the statute and does not conflict with subsection (1) or (3). As such, we reject the Appellants' argument that the statute is ambiguous or that subsection (5) contravenes the purpose of Idaho Code section 23-808.

**H.      We decline to award attorney fees on appeal.**

Both parties request attorney fees under Idaho Code section 12-121. The Appellants request attorney fees on appeal under Idaho Code section 12-121 "[b]ecause Lynn lied to the police and obstructed justice." The Appellants emphasize that Lynn's actions caused the matter to proceed to summary judgment. Lynn also requests attorney fees under section 12-121, arguing that the appeal was brought "frivolously." Although Lynn cites *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 117 P.3d 130 (2005), she provides no argument in further support of her request.

Idaho Code section 12-121 allows the award of attorney fees in a civil action if the appeal merely invites the Court to second guess the findings of the lower court. *Owen v. Smith*, 168 Idaho 633, 485 P.3d 129, 143 (2021) (citing *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010)). Attorney fees may also be awarded under section 12-121 "if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Id*. at ___, 485 P.3d at 143–44. An award of fees under section 12-121 is within this Court's discretion. *Id*.

A party seeking attorney fees on appeal must state the basis for such an award. *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020) (citing I.A.R. 35(a)(5), (b)(5)). In addition, the party seeking fees must provide argument on the issue. I.A.R. 35(a)(6), (b)(6). "[A]bsent any legal analysis or argument, 'the mere reference to [a] request for attorney fees is not adequate.' " *Id*. (quoting *Johnson v. Murphy*, 167 Idaho 167, 176, 468 P.3d 297, 306 (2020)) (second alteration in original).

We decline to award either party attorney fees under Idaho Code section 12-121. The Appellants are not the prevailing party on appeal, thus, they are not entitled to attorney fees. Even though we have concluded that Lynn is the prevailing party on appeal, she provided no argument to support her request for attorney fees. Because a "mere reference to [a] request for attorney fees is not adequate" we decline to award Lynn attorney fees on appeal. We also recognize that the

26

Appellants raised important, complex issues that merited review; thus, their appeal was not brought frivolously, unreasonably, or without foundation.

## V. CONCLUSION

We affirm the decision of the district court. Costs, but not attorney fees, are awarded to Lynn as the prevailing party on appeal.

Justices BRODY, MOELLER, and ZAHN, CONCUR.

STEGNER, Justice, specially concurring.

I concur fully in the majority's decision; however, I write separately to note that the majority's opinion leaves open the question of whether equitable estoppel could have been successfully invoked against Lynn. Though Appellants argue spoliation and unclean hands, neither doctrine squarely fits the facts of this case. Equitable estoppel, on the other hand, "'is available to a plaintiff when the defendants, by their representations or conduct, kept the plaintiff from pursuing a cause of action during the limitation period.'" *Gregory v. Stallings*, 167 Idaho 123, 131, 468 P.3d 253, 261 (2020) (quoting *Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996)). "The doctrine does not 'extend' the statute of limitations, but prevents a party from asserting it, even if it would otherwise bar the action." *Id.* To succeed on a claim of equitable estoppel, a plaintiff must show:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth;

(2) that the party asserting estoppel did not know or could not discover the truth;

(3) that the false representation or concealment was made with the intent that it be relied upon; and

(4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Id.* at 131–32, 468 P.3d at 261–62.

I agree that, as the majority concludes, Appellants were required to comport with the 180-day notice requirement of Idaho's Dram Shop Act in order to bring a cause of action against Lynn. *See* I.C. § 23-808(5). However, if it is true that Lynn intentionally lied to police about whether she had purchased alcohol for the boys, and there does not seem to be any dispute that it is, it appears Appellants could have successfully invoked equitable estoppel to prevent Lynn from asserting Appellants' failure to provide Lynn notice within 180 days barred Appellants' claim against Lynn.

27

At the end of the day, the majority's opinion should not be read to preclude equitable estoppel from being employed in a future case in which a defendant lies to the police and in so doing prevents a plaintiff from learning facts which would give rise to a violation of Idaho's Dram Shop Act. The resolution of that case will have to await a situation in which the facts give rise to a claim of equitable estoppel and in which the plaintiff raises such a claim. Equitable estoppel must be asserted by the party seeking to have it employed. *See Med. Recovery Servs., LLC v. Siler*, 162 Idaho 30, 35, 394 P.3d 73, 78 (2017) ("It was error for the magistrate court to *sua sponte* raise the defenses of quasi and equitable estoppel."). Because equitable estoppel was not raised by Appellants, it is not available to this Court to employ here. I therefore fully join the majority's opinion, and leave the question of equitable estoppel for another day.